# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DAVID D.[1]**, | Case No. 3:18-cv-827-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **ANDREW M. SAUL,** Commissioner of Social Security, | |
| Defendant. | |

George J. Wall, EAST PDX LAW, 825 NE 20th Avenue, Suite 330, Portland, OR 97232. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Thomas M. Elsberry, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

David D. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying Plaintiff's application for

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act. This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's Application

Plaintiff was born September 21, 1972. AR 181. He graduated from high school, attended four years of college (but did not graduate), and speaks English. AR 185, 695, 94. At the time of his alleged disability onset, Plaintiff was 42 years old. AR 254. Before his alleged disability onset, his most recent full-time employment was in 2002, when he worked in a mailroom as an administrative temporary employee. AR 39-40, 202.

Plaintiff alleges disability due to major depressive disorder, post-traumatic stress disorder ("PTSD"), anxiety, and autism spectrum disorder. AR 52, 254. On May 13, 2015, Plaintiff protectively filed his SSI application, along with a Title II application for disability insurance benefits ("DIB"), alleging a disability start date of May 13, 2002. AR 181-92. On March 7, 2017, Plaintiff withdrew his DIB claim and amended his alleged disability onset date to May 13, 2015. AR 254.[2]

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on December 14, 2015, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 114. Plaintiff, represented by counsel, appeared and testified at a hearing held on March 10, 2017. AR 36. In April 2017, the ALJ issued a written decision denying Plaintiff's application. AR 13-27. Plaintiff now seeks judicial review of that decision.

---

[2] The ALJ's opinion appears to have overlooked Plaintiff's amendment, which withdrew Plaintiff's DIB claim and amended his alleged disability onset date. Before this Court, both parties argue Plaintiff's claims as amended. Accordingly, the Court's review is based on Plaintiff asserting only a claim for SSI based on an alleged disability onset date of May 13, 2015.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the

claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

At step one of the five-step sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 13, 2002. AR 15. At step two, the ALJ found that Plaintiff has the following severe impairments: depression, an anxiety disorder, an autism spectrum disorder, PTSD, and a substance addiction disorder. AR 15. At step three, the ALJ found that none of Plaintiff's impairments—or combinations of impairments—meet or equal the severity of the "listed" impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 16.

The ALJ next assessed Plaintiff's RFC and found that Plaintiff could perform work "at all exertional levels but with the following nonexertional limitations: the claimant is limited to simple, routine, and repetitive tasks and simple work-related decisions. The claimant can have occasional contact with coworkers and the public." AR 18. At step four, the ALJ noted that the Plaintiff had no past relevant work. AR 25. At step five, the ALJ asked a vocational expert ("VE") whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and assessed RFC. The VE testified that Plaintiff could perform jobs that exist in significant numbers in the national economy, including Hospital Housekeeper, Floor Cleaner, and Pressure Washer. AR 26. Accordingly, the ALJ found Plaintiff "not disabled." *Id*.

## DISCUSSION

Plaintiff contends that the ALJ erred by: (1) improperly rejecting the opinion of examining psychologist Caleb Burns, Ph.D.; (2) improperly rejecting the opinion of examining psychologist Karla Causeya, Psy.D.; and (3) improperly rejecting the opinion of treating physician's assistant Sandra Ford, P.A. The ALJ gave "little weight" to the opinions of Dr. Burns, Dr. Causeya, and Ms. Ford, all of whom concluded that Plaintiff's assessed mental impairments rendered him disabled. AR 22-23, 473, 707, 711. The ALJ gave "great weight,"

however, to two non-examining state agency psychological consultants, both of whom assessed Plaintiff's impairments as less restrictive than did Dr. Burns, Dr. Causeya, or Ms. Ford. AR 24.[3]

## A. Standards for Reviewing Medical Opinions

### 1. Opinions by Physicians

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. An ALJ may, however, reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

"[S]pecific, legitimate reasons" for rejecting a physician's opinion may include its basis on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554 F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, F.3d at 1042-43. An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014).

---

[3] The ALJ employs the term "given little weight" to describe his assessments of the three source opinions at issue, and Plaintiff characterizes the ALJ's assessments as "rejecting" those opinions. The Ninth Circuit uses these terms interchangeably. *See, e.g.*, *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008)

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* at 1012 (quoting *Reddick*, 157 F.3d 715, 725 (9th Cir. 1998)). In other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

### 2. Opinions by a Physician's Assistant

Effective March 27, 2017, the Social Security Administration amended its regulations and Social Security Rulings ("SSRs") relating to "acceptable medical sources" and "non-acceptable medical sources" or "other medical sources."[4] Most of these changes were effective only for claims filed after March 27, 2017. The Administration, however, implemented a revised version of 20 C.F.R. § 404.1527 to govern claims filed before March 27, 2017. Because Plaintiff's claim was filed before March 27, 2017, and the ALJ issued his opinion after March 27, 2017, the revised version of 20 C.F.R. § 404.1527 governs Plaintiff's claims.

Under the regulations in effect at the time of Plaintiff's application, only licensed physicians and certain other qualified specialists are considered acceptable medical sources. 20 C.F.R. § 404.1513(a); *see also* Social Security Ruling ("SSR") 06-03p, *available at* 2006 WL 2329939 (Aug. 9, 2006) (defining "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified

---

[4] The Commissioner rescinded SSR 06-03p, broadened the definition of acceptable medical sources to include Advanced Practice Registered Nurses (such as nurse practitioners), audiologists, and physician assistants for impairments within their licensed scope of practice, and clarified that all medical sources, not just acceptable medical sources, can provide evidence that will be considered medical opinions. *See* 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 8544; 82 F. Reg. 15263.

speech pathologists). Health care providers who are not acceptable medical sources, such as physician assistants, are still considered "medical sources," and the ALJ can use these "other" medical source opinions in determining the "severity of the individual's impairment(s) and how it affects the individual's ability to function." 20 C.F.R. § 404.1513(d).

The ALJ also should consider the same factors, if relevant under the facts of the particular case, to evaluate the opinions of both non-acceptable and acceptable medical sources. 20 C.F.R. § 404.1527(f)(1). These factors include: (1) the examining relationship (more weight is generally given to an examining source over a non-examining source); (2) the treatment relationship (more weight is generally given to opinions from treating sources because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)"); (3) the length of the treatment relationship and frequency of examination; (4) the nature and extent of the treatment relationship (more weight is generally given to sources with more knowledge about the claimant's impairments); (5) supportability (the degree to which a medical source presents relevant evidence, including medical signs and testing, and explanations to support an opinion); (6) consistency with the medical record as a whole; (7) specialization (more weight is generally given to specialists' opinions about medical issues related to their areas of specialty); and (8) other relevant factors (including knowledge about social security "disability programs and their evidentiary requirements" and "the extent to which a medical source is familiar with the other information in [the claimant's] case record"). *Id.* § 404.1527(c). The ALJ "should explain the weight given to opinions from [medical] sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning." *Id.* § 404.1527(f)(2).

The fact that a source is an acceptable medical source sometimes entitles that source's opinions to more weight than the opinions from other medical sources. SSR 06-03p. Nonetheless, in certain instances, after applying the factors for weighing opinion evidence, and ALJ properly may find that an opinion from a medical source who is not an acceptable medical source outweighs the opinion of the acceptable medical source:

> For example, it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole.

20 C.F.R. § 404.1527(f)(1).

An ALJ may not reject the competent testimony of other medical sources without comment. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the competent testimony of "other" medical sources, the ALJ must give "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). The ALJ also may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19.

**B. The Medical Opinions in this Case**

**1. Dr. Burns' Opinion**

Dr. Burns conducted a psychodiagnostic evaluation of Plaintiff in May 2015. AR 462-74.

Dr. Burns' opinion was based on an interview with Plaintiff, a review of his medical records, and

standardized psychological testing including the Personality Assessment Inventory ("PAI"), the

Patient Health Questionnaire-9, the Mood Assessment Scale, the Generalized Anxiety Disorder-7

Scale, The Beck Anxiety Inventory, and the Word Reading Subtest of the Wide Range

Achievement Test-4. AR 462. Dr. Burns diagnosed Plaintiff as "chronically mentally ill" with

"Major Depression and PTSD." AR 473-74. Dr. Burns explained the extent and effects of

Plaintiff's assessed impairments:

> Clearly because of his major depression and PTSD symptoms
> [Plaintiff] is not employable in any competitive work setting for at
> least the next 12 months. If he is placed in a work setting, he will
> be unable to adhere to even minimal standards of attendance, will
> be unable to interact with fellow employees or with the general
> public without interference from psychologically-based symptoms,
> will be unable to accept instructions and respond appropriately to
> criticism from supervisors, etc. Even personal hygiene is an
> enormous challenge for him and he has not taken a shower or bath
> this year, cannot remember when he last brushed his teeth, and he
> does no housework at all.

AR 473. Dr. Burns indicated that he would "be very interested in reviewing any

information at all which conflicts with my views regarding [Plaintiff's] lack of employability for

the foreseeable future." *Id.*

**2. Dr. Causeya's Opinion**

Dr. Causeya conducted a psychodiagnostic evaluation of Plaintiff in February 2017.

AR 693-707. Dr. Causeya interviewed Plaintiff and his mother, gave Plaintiff a mental status

examination, reviewed Plaintiff's medical records, and conducted standardized psychological

testing, including the Wechsler Adult Intelligence Scale, fourth edition and a PAI. Dr. Causeya

diagnosed Plaintiff with Autism Spectrum Disorder, Major Depressive Disorder, PTSD, and Opioid Use Disorder. AR 693, 706. Dr. Causeya concluded that Plaintiff was "unable to obtain or maintain gainful employment" based upon her findings. AR 707.

In her Mental Residual Functional Capacity Assessment, Dr. Causeya opined that Plaintiff had moderately severe limitations in the following areas: an ability to understand and remember short and simple repetitive instructions; an ability to carry out detailed instructions; an ability to sustain an ordinary routine without special supervision; an ability to work in coordination with or proximity to others without being distracted; an ability to make simple work-related decisions; an ability to complete a normal workday and work week without interruptions form psychologically-based symptoms and to perform at a constant pace without an unreasonable number and length of rests; an ability to interact appropriately with the general public or customers; an ability to accept instructions and respond appropriately to criticism from supervisors; an ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; an ability to respond appropriately to expected or unexpected change in the works setting and routine; and an ability to travel in unfamiliar settings and use public transportation. AR 708-09, 741.

### 3. Ms. Ford's Opinion

Ms. Ford treated Plaintiff regularly for more than two years. Ms. Ford concurred with diagnoses and opinions of Drs. Burns and Causeya's regarding Plaintiff's limitations. AR 711-12. Ms. Ford noted that while Plaintiff "has made progress during his treatment . . . he continues to suffer from dysphoric mood, anxiety, social isolation, distractibility, confusion, and bouts of suicidal ideation. AR 712 Ms. Ford opined that Plaintiff was unable to work "due to the severity of PTSD and depressive symptoms, coupled with his low average IQ." AR 711.

## C. The ALJ's Evaluation of Plaintiff's Providers

The ALJ rejected the opinions of Drs. Burns and Causeya and P.A. Ford for the same reasons, using nearly identical text. The Court will thus discuss together the ALJ's rationale for rejecting the opinions of all three providers.

The ALJ gave the medical opinions little weight for the following reasons (taken from the section discussing Dr. Burns' opinion):

> The assessment itself does not comport with the overall medical evidence record, including an absence of psychiatric hospitalizations, some symptom improvement with sobriety and medication compliance and indications in two separate psychological consultative examinations of the claimant exaggerating his psychological problems. Additionally, as noted above, [each provider's] assessment also does not comport with the claimant's ability to attend college courses, care for his father or teach his niece piano or with notes that he colored his hair, met up with friends and attended a Christmas party as well as a concert.

AR 22 (citations omitted).[5] These reasons are discussed in turn.

### 1. Absence of Psychiatric Hospitalizations

The ALJ did not explain why psychiatric hospitalization was necessary for any of the discounted medical opinions to be given more weight. The Commissioner did not respond to

---

[5] For Drs. Burns and Causeya, the ALJ added the additional reason that the doctors only conducted a one-time examination. For Dr. Burns, the ALJ added that Dr. Burns' evaluation was conducted based on a referral from a homeless advocacy organization. The Commissioner concedes that the latter reason is not a valid reason to discount Dr. Burns' opinion. The Commissioner also concedes that the fact that Drs. Burns and Causeya only conducted a one-time examination is not a proper basis, standing alone, to discount their opinions, but notes that the extent and nature of the provider's relationship with Plaintiff is a "legitimate factor" the ALJ could consider. The ALJ, however, gave great weight to the reviewing physicians who had never seen Plaintiff because those physicians had reviewed records and thus had a "longitudinal" view of Plaintiff's condition. The ALJ did not discuss, however, the fact that Drs. Burns and Causeya also reviewed additional medical records. Nor did the ALJ discuss whether Ms. Ford's long-term treating relationship gave her a longitudinal view of Plaintiff's condition, or whether Dr. Causeya's interview of Plaintiff's mother provided similar information. Accordingly, this reason was not specific, legitimate, or germane.

Plaintiff's argument that a lack of psychiatric hospitalizations is not a legitimate reason to discount a medical provider's opinion. Although failure to seek treatment may be a reason to discount the severity of an alleged impairment, Plaintiff received long-term and significant mental health treatment both before and after his alleged disability onset date. Before his alleged disability onset date he was treated in the emergency room where he presented as "agitated, paranoid, hollering out, [and] delusional." AR 260. Although the ALJ found "some" improvement with Plaintiff's symptoms since his hospitalization, the ALJ did not find significant or substantial improvement during the alleged disability period. Plaintiff continues to receive significant mental health treatment, including several prescription medications, and requires assistance in certain daily living tasks.

When a plaintiff has received mental health treatment, courts regularly reject a lack of psychiatric hospitalization as a specific and legitimate reason to discount a medical provider's opinion. *See, e.g.*, *Morales v. Berryhill*, 239 F. Supp. 3d 1211, 1216 (E.D. Cal. 2017) ("[T]hat plaintiff was not psychiatrically hospitalized does not mean that he did not have a mental health impairment that prevented him from working."); *Finn v. Astrue*, 2013 WL 501661, at *5 (C.D. Cal. Feb. 7, 2013) ("[T]he conclusion that the opined mental limitations are not supported because Plaintiff was not hospitalized for mental health treatment is unfounded.").

### 2. Symptom Improvement

Plaintiff argues that his limited symptom improvement is not a legitimate basis for discounting any of the three opinions. Symptom improvement must be weighed within the context of an "overall diagnostic picture." *Holohan v. Massanari,* 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function."). The relevant question is not whether Plaintiff had "some symptom

improvement," but whether Plaintiff's improved condition is contradictory to the limitations as opined by the three providers.

Ms. Ford expressly noted Plaintiff's improvement, but stated that despite his "progress during his treatment" Plaintiff "continues to suffer dysphoric mood, anxiety, social isolation, distractibility, confusion and bouts of suicidal ideation." AR 712. Further, Drs. Burns and Causeya conducted several objective tests before reaching their opinions. These tests evaluated Plaintiff's present condition, included his limited improvement. Additionally, Plaintiff continued to require extensive mental health treatment and continued to demonstrate challenges, such as never brushing his teeth and very rarely bathing. The ALJ also failed to quantify or explain the level of "some" improvement. Accordingly, Plaintiff's limited symptom improvement is not a specific, legitimate reason, supported by substantial evidence in the record, to discount the opinions of Drs. Burns or Causeya. It also is not a germane or proper reason to discount Ms. Ford's opinion, particularly when she specifically recognized Plaintiff's limited improvement in reaching her opinion.

### 3. Plaintiff Exaggerating his Psychological Problems

The ALJ notes that the record shows "indications in two separate psychological consultative examinations of the claimant exaggerating his psychological problems." AR 22. Although the ALJ did not cite to the record, it appears that he was alluding to the PAI administered by Dr. Burns and the PAI administered by Dr. Causeya.[6] Each of these doctors expressly noted in their reports that Plaintiff's PAIs indicated some possible exaggeration. Nonetheless, each doctor, after conducting other objective tests, reviewing medical records, and

---

[6] In their respective briefs, Plaintiff assumes—and Commissioner does not dispute— these references.

conducting interviews of Plaintiff and, in the case of Dr. Causeya, Plaintiff's mother, reached their opinions despite any possible exaggeration in the PAIs.

Dr. Burns noted that Plaintiff "achieved a [PAI] profile that suggests he may have been endorsing items which tend to present himself in an unfavorable light." AR 473. According to Dr. Burns' evaluation, the PAI Clinical Interpretive Report stated: "This pattern does not necessarily indicate a level of distortion that would render the test results uninterpretable, the interpretive hypotheses presented in this report may over represent the extent and degree of significant test findings in certain areas." AR 473. Dr. Burns observed that the test results were nonetheless "consistent with [Plaintiff's] presentation in the course of this evaluation—that of significant depression and significant anxiety." AR 473. He also opined that Plaintiff "did not appear to be overstating his psychiatric difficulties." AR 473. Dr. Burns formed his opinion after an evaluation that included an interview with Plaintiff; a mental status examination; a review of prior medical records (including a Functional Summary and treatment and medical records); and psychological testing that included the PAI. AR 462.

Similarly, Dr. Causeya noted that the PAI results indicated possible distortion— specifically, "a defensiveness about particular shortcomings as well as an exaggeration of certain problems." AR 702. Dr. Causeya formed her opinion after reviewing records, including Dr. Burns' report, interviewing Plaintiff and his mother, and conducting other testing of Plaintiff.

The ALJ is responsible for resolving conflicts in the medical record. *Carmickle*, 533 F.3d at 1164. But when the ALJ criticizes an examining psychologist's interpretation of test results, and that criticism is unsupported by medical evidence, the ALJ is not free to substitute his own lay opinion. *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (holding that the ALJ

erred by making "his own exploration and assessment as to claimant's physical condition" even though he "was not qualified as a medical expert").

Drs. Burns and Causeya formed their opinions after performing their own examinations, testing, and a review of medical records and test results, including the PAI Clinical Interpretive Report. They did not ignore the potential exaggeration in the PAI, but expressly acknowledged it and found it not to overcome the other evidence in forming their opinions. The fact that Ms. Ford was not deterred from the findings of Drs. Burns and Causeya because of potential distortion of the PAI results—a distortion that both doctors expressly noted yet found did not overcome the other testing and medical evidence used to form their opinions—is not a proper and germane reason to discredit Ms. Ford's opinion.

### 4. Activities of Daily Living

The ALJ found the medical opinions to be inconsistent with Plaintiff's ability to care for his ailing father, teach his niece piano, color his hair on one occasion, meet up with friends,[7] attend one Christmas party, and attend one concert.[8] The relevant inquiry is whether these activities are inconsistent with the limitations as opined by Drs. Burns and Causeya and Ms. Ford.

Dr. Burns found that if Plaintiff was placed in a work setting, he would be unable to adhere to minimal standards of attendance, accept instructions and respond appropriately to criticism from supervisors, or interact with the general public or fellow employees without

---

[7] The ALJ cited to a single chart note in which under the section titled "Individual's report of progress towards goals/objectives since last session" it is noted that Plaintiff stated that he had met up with friends.

[8] The ALJ also noted Plaintiff's ability to attend some college classes, but that occurred before the amended alleged disability onset date, and the Commissioner does not argue that this was a valid reason provided by the ALJ.

interference from psychologically-based symptoms. Dr. Causeya found that Plaintiff had moderately severe limitations in the following areas: sustaining an ordinary work routine without special supervision; working in coordination with or proximity to others without being distracted; an ability to make simple work-related decisions; an ability to interact appropriately with the general public or customers; an ability to accept instructions and respond appropriately to criticism from supervisors; and an ability to maintain socially appropriate behavior. Ms. Ford agreed with these assessments.

An ALJ may not simply cherry-pick evidence to discount opinions or make an adverse credibility determination. *See, e.g.*, *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016) (quoting *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011)); *Garrison*, 759 F.3d at 1017-18. Rather, the ALJ must consider a claimant's full record before arriving at a conclusion based on substantial evidence. *See Holohan*, 246 F.3d. at 1207. ("[T]he ALJ selectively relied on some entries in Holohan's records . . . and ignored the many others that indicated continued, severe impairment."); *see also Esparza v. Colvin*, 631 F. App'x 460, 462 (9th Cir. 2015) (finding that the claimant's limited activities, including working 13-20 hours per week as a caregiver for his father, were "generally consistent" with claimed limitations from severe gastrointestinal problems, panic attacks, trouble sleeping, and depression).

Regarding mental health issues in particular, the Ninth Circuit has cautioned against relying on isolated instances of improved function as a basis for rejecting a claimant's testimony:

> It is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

*Garrison*, 759 F.3d at 1017.

Additionally, the mere fact that a claimant can carry out minimal activities, or that a claimant attempts to lead a normal life, does not mean he is foreclosed from disability benefits. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled." (quotation marks omitted)); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations").

Plaintiff's isolated, limited instances of social activity are not inconsistent with the medical providers' conclusions that in a work setting Plaintiff would be unable to appropriately interact with the public or fellow employees and would have difficulty taking instructions and accepting criticism. Nor does the fact that Plaintiff can interact with his father or his niece conflict with this opinion. The fact that he colored his hair on one occasion (which he appears to have done himself, not in a salon) does not appear to have any relevance. Plaintiff's activities of daily living are not a specific, legitimate reason to discount the opinions of Drs. Burns or Causeya, or a germane reason to discount the opinion of Ms. Ford.

### 5. Overall Medical Evidence Record

The ALJ states that the medical opinions do "not comport with the overall medical evidence record," AR 22, and the Commissioner argues, citing *Orn*, that factors relevant to evaluating a medical opinion include "the consistency of the medical opinion with the record as a whole." 495 F.3d at 631. The ALJ may reject a medical opinion that is "conclusory, brief, and

unsupported by the record as a whole." *Batson*, 359 F.3d at 1195. The ALJ must do so, however,

only for reasons supported by "substantial record evidence." *Roberts*, 66 F.3d at 184 (9th

Cir. 1995), *as amended* (Oct. 23, 1995). The ALJ errs when he assigns a medical opinion little

weight while only "criticizing it with boilerplate language that fails to offer a substantive basis

for his conclusion." *Garrison*, 759 F.3d at 1012.

Standing alone, a statement that "the record as a whole does not support" the medical

opinions in this case is boilerplate. The ALJ's rejection of a medical source opinion must rely on

the specific instances in the record the ALJ points to as a basis for that rejection. Accordingly,

the ALJ's assertion of inconsistency with the "record as a whole" is not a sufficiently specific or

germane reason to reject the medical opinions. The Court has already addressed the reasons for

which the ALJ provided a more specific discussion or a substantive basis.

### 6. Conclusion

The ALJ did not provide a specific, legitimate reason, supported by substantial evidence

in the record, to discount the opinions of Dr. Burns or Dr. Causeya. The ALJ also did not provide

a germane reason to discount the opinion of Ms. Ford, nor did the ALJ appear to follow 20

C.F.R. § 404.1527(f)(1) and consider the appropriate factors under § 404.1527(c) in evaluating

Ms. Ford's opinion. Accordingly, the ALJ erred in evaluating the opinions of these medical

sources.

## D. Remedy

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to

remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation

omitted). Although a court should generally remand to the agency for additional investigation or

explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v.

Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the

utility of further proceedings. A court may not award benefits punitively, and must conduct a

"credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine

if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec.*

*Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this

Court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error

and then reviews the record as a whole to determine whether the record is fully developed, the

record is free from conflicts and ambiguities, and there is any useful purpose in further

proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has

been fully developed and there are no outstanding issues left to be resolved does the district court

consider whether the ALJ would be required to find the claimant disabled on remand if the

improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its

discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however,

and is not required to credit statements as true merely because the ALJ made a legal error. *Id.*

at 408.

The ALJ erred in failing to provide legally sufficient reasons for rejecting the opinions of

Dr. Burns, Dr. Causeya, and Ms. Ford. Even if, however, these opinions regarding Plaintiff's

disability were given great weight, the record would not remain "free from conflicts and

ambiguities." These opinions would still conflict with the conclusions of reviewing psychologists

Dr. Kessler and Dr. Anderson. *See Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

(holding that "the trier of fact and not the reviewing court must resolve conflicts in the

evidence"). Further, the ALJ's non-disability determination was based not only on the conflicting

medical source opinions, but also on an evaluation of Plaintiff's subjective symptom testimony

(Plaintiff did not dispute the ALJ's assessment that Plaintiff's testimony was not entirely reliable).

The Court remands the Commissioner's decision for further proceedings so that the ALJ properly may consider the opinions of Drs. Burns and Causeya and Ms. Ford, reformulate Plaintiff's RFC if necessary, conduct a new Step Five analysis if necessary, and engage in further proceedings consistent with this decision that the ALJ deems appropriate.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 12th day of August, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge